IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Robert Steve Jolly, | ) | C/A No.: 1:10-1159-TLW-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Phillip Thompson, Tom Fox, Nurse Hipp, Officer Updegraff, Major Johnson, Nurse Connie, and Capt. Stafford, | ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

Plaintiff, proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983. This matter comes before the court on Defendants' Motion for Summary Judgment [Entry #57]. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(d) (D.S.C.). Because the motion for summary judgment is dispositive, this report and recommendation is entered for consideration by the district judge.

I.     Factual and Procedural Background

Plaintiff filed his complaint on May 10, 2010 alleging that Defendant Connie almost gave him the wrong amount of insulin on two occasions. [Entry #1]. He believes that he has been given the wrong insulin on other occasions and alleges he has developed vertigo for the first time in his life as a result. *Id.* He further alleges that Defendant Stafford lied to his attorney about Plaintiff's custody status, and Plaintiff was forced to fire his attorney when she believed Stafford instead of him. He also alleges that Defendant Updegraff deliberately placed him in a cell without an open bottom bunk and

that he fell on other inmates. Plaintiff also generally alleges that Defendant Hipp "cut [his] medicine" and Defendants refused to let him see "a real doctor." *Id.* at 4. Finally, Plaintiff claims he is served cold soup and that rice and pasta should be removed from his plate because he is a diabetic. *Id.* at 5.

Defendants filed their motion for summary judgment on November 1, 2010. [Entry #57]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the Defendants' motions. [Entry #61]. Plaintiff filed a timely response on November 22, 2010. [Entry #63]. Having carefully considered the parties' submissions and the applicable law, the undersigned recommends that Defendants' motion for summary judgment be granted.

II.     Discussion

    A.     Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents,

electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; " or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

    B.    Analysis

        1.    Deliberate Indifference to Serious Medical Needs

Plaintiff claims that Defendants' acts or omissions in treating his diabetes and vertigo violated his constitutional rights. In the case of *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments

3

which "involve the unnecessary and wanton infliction of pain." *Id.* (quoting *Gregg v. Georgia*, 428 U.S. 153, 169–73 (1976)). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.

*Estelle*, 429 U.S. at 103–105 (citations and footnotes omitted). Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 107.

The Fourth Circuit has also considered this issue in the case of *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." *Id.* at 851 (citations omitted). Unless medical needs

4

were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. *Estelle*, 429 U.S. at 102–103; *Farmer v. Brennan*, 511 U.S. 825 (1994); *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir. 1986).

Although the Constitution requires that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice. *Thomas v. Anderson City Jail*, No. 6:10-3270-RMG-KFM, 2011 WL 442053, at *3 (D.S.C. Jan. 19.2011)*; Jackson v. Fair*, 846 F. 2d 811, 817 (1st Cir. 1988). Although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. *See Brown v. Thompson*, 868 F. Supp. 326 (S.D. Ga. 1994). Further, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. *See Smart v. Villar*, 547 F. 2d 112 (10th Cir. 1976); *Lamb v. Maschner*, 633 F. Supp. 351, 353 (D.Kan. 1986). Mistakes of medical judgment are not subject to judicial review in a § 1983 action. *Russell v. Sheffer*, 528 F. 2d 318, 319 (4th Cir. 1975).

Plaintiff alleges that he "caught Nurse Connie on two separate occasions trying to give me straight Novolog instead of Novolog 70/30." [Entry #1]. Plaintiff further alleges that Defendants denied him an opportunity to see an outside physician because Defendants were trying to cover up the fact that he was given the wrong medication. *Id*. Plaintiff claims that as a result of being given the wrong medicine, he has developed vertigo. However, Defendants have submitted evidence from a medical professional

Plaintiff previously saw indicating that he previously suffered from vertigo. [Entry #59-2 at 5]. Additionally, Defendants submitted evidence that Plaintiff was caught hoarding the antivert that was prescribed for his vertigo. [Entry #59-1 at 14]. In his response, Plaintiff claims that Defendants' actions and/or omissions caused him to develop gastroesophageal reflux disease. Entry #63 at ¶ 12. However, the hospital record submitted in support of this claim is a invoice for radiology and contains no diagnosis.

Plaintiff's conclusory allegations that Defendants have acted with deliberate indifference to his medical needs, without any supporting medical documentation, must fail in light of the overwhelming evidence that Plaintiff's need for medical care has not been ignored. A review of Plaintiff's medical records indicates he has received thorough and significant medical treatment during his incarceration at JRLDC for the various medical conditions that have arisen since his incarceration and those that he had suffered from prior to his incarceration, including those described in his pleadings. Plaintiff has failed to set forth any evidence to support his allegations that he was given the wrong medication, that the wrong medication caused him to develop vertigo, or that Defendants refused him medical care. Although Plaintiff may disagree with his course of treatment while at JLRDC, such a claim is not actionable under the Eighth Amendment. Therefore, it is recommended that Defendants be granted summary judgment on Plaintiff's medical claims.

2.   Cell Assignment

Plaintiff also complains that he was not given a bottom bunk in spite of his health concerns. Prisoners do not have a constitutionally recognized liberty interest in a particular security classification or prison placement. *Hewitt v. Helms*, 459 U.S. 460, 468 (1983) Similarly, there is no constitutional right for a state prisoner or federal prisoner to be housed in a particular institution, at a particular custody level, or in a particular portion or unit of a correctional institution. *See Olim v. Wakinekona*, 461 U.S. 238, 245–46 (1983); *Ange v. Paderick*, 521 F.2d 1066 (4th Cir. 1975). Here, based on the recommendation of JRLDC medical staff, Plaintiff was not placed on a top bunk. *See* Aff. J. Johnson, ¶¶ 13, 19; Exh. H thereto [Entry #60-2]. However, because no bottom bunks were available, Plaintiff was placed on a mattress on the floor. *Id*. Plaintiff has not shown that this decision caused him any injury. Therefore, Plaintiff has failed to show that his constitutional rights were violated by not receiving a bottom bunk, and it is recommended that Defendants be granted summary judgment.

3.   Dietary Claims

Plaintiff also claims he is served cold soup and should not be served rice and pasta due to his diabetes. However, Defendants submitted evidence indicating Plaintiff was informed that the registered dietician approved limited amounts of rice and pasta in Plaintiff's diet. [Entry 60-2 at 15]. Plaintiff has not disputed this evidence. Additionally, Plaintiff has failed to show that the temperature of his soup violated his constitutional

rights. Therefore, it is recommended Defendants be granted summary judgment based on Plaintiff's claims regarding his diet.

### 4. Plaintiff's Termination of his Attorney

Finally, Plaintiff alleges that Defendant Stafford told Plaintiff's lawyer he was in the infirmary, when in fact he had already been transferred to "mini-max" for disciplinary reasons. [Entry #63 at 4]. According to Plaintiff, because his attorney believed Stafford instead of Plaintiff, he fired his attorney. *Id.* Based on this incident, Plaintiff requests Stafford be ordered to pay for another attorney for Plaintiff. Plaintiff has failed to set forth any legal basis for how this incident constituted a violation of his constitutional rights. Therefore, it is recommended Defendants motion for summary judgment be granted with regard to this claim.

### 5. Qualified Immunity

Defendants also assert that they are entitled to qualified immunity in their individual capacities. The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual

constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998).

As discussed above, Plaintiff has failed to present sufficient evidence to support his constitutional violation allegations. Nevertheless, *assuming arguendo* that Plaintiff has presented sufficient evidence of a constitutional violation, Defendants are entitled to qualified immunity from suit.

In *Maciariello v. Sumner*, 973 F.2d 295 (4th Cir. 1992), the Fourth Circuit further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

*Maciariello*, 973 F.2d at 298.

In the instant case, Plaintiff has failed to establish any theory of liability upon the part of Defendants, and, furthermore, Plaintiff has failed to establish the existence of any constitutional deprivation. However, if the court were to find that Plaintiff has established some theory of liability upon the part of Defendants, and therefore, the existence of a constitutional deprivation, Defendants are still entitled to qualified immunity. The record before the court shows that as to Plaintiff and the specific events at issue, these Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion. They did not transgress any statutory or constitutional rights of Plaintiff that they were aware of in the discretionary exercise of their respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, these Defendants are entitled to qualified immunity.

III.     Conclusion

For the reasons discussed above, it is recommended that Defendants' Motion for Summary Judgment [Entry #57] be granted and this case be dismissed in its entirety. If the district judge accepts this recommendation, Plaintiff's motion for a temporary restraining order [Entry #71] will be moot.

IT IS SO RECOMMENDED.

August 1, 2011                               Shiva V. Hodges
Florence, South Carolina             United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**